IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| EUGENE H. SCHWARTZ, | ) | |
| | ) | |
| Plaintiff, | ) | 6:15-CV-00534-JO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.,

Plaintiff, Eugene Schwartz ("Schwartz") appeals the Commissioner's decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I affirm the Commissioner's decision.

**PRIOR PROCEEDINGS**

Schwartz filed applications under Titles II and XVI, alleging disability beginning October 1, 2010, due to cardiomyopathy, congestive heart failure, ventricular tachycardia, and sleep apnea. Admin. R. 18, 20, 307. Schwartz satisfied the insured status requirements through December 31, 2015, and must establish disability on or before that date to prevail on his Title II claim. Admin. R. 18.

-1-    OPINION AND ORDER

The ALJ applied the five-step analysis outlined in the regulations to determine whether Schwartz was disabled. Admin. R. 19-20. The ALJ determined that heart failure, cardiomyopathy, and obesity limited Schwartz's ability to work and that he, therefore, satisfied the *de minimus* severity requirement of step two. Admin. R. 22. The ALJ then determined that Schwartz's impairments did not meet or equal the criteria for any of the presumptively disabling impairments listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P ("Listed Impairments"). Admin R. 23.

Because Schwartz failed to prove that his impairments were equivalent to any of the Listed Impairments, the ALJ was required to assess his residual functional capacity ("RFC"). She found that, despite his impairments, he could lift or carry in the light range, push or pull ten pounds, stand or walk for a total of approximately two hours and sit for approximately six hours in an eight-hour workday with normal breaks. She found that Schwartz had limited ability to climb and to engage in postural activities such as balancing, stooping, kneeling, and so forth. She found that Schwartz required work where he could avoid airborne pulmonary irritants and concentrated exposure to workplace hazards. Admin. R. 23-24.

The vocational expert ("VE") testified that a hypothetical worker with Schwartz's RFC would be able to perform the job requirements of sedentary unskilled occupations such as phone solicitor, order clerk, and document preparer, which together represent more than 400,000 jobs in the national economy. Admin. R. 31-32. Thus, the ALJ concluded that Schwartz was not disabled within the meaning of the Social Security Act. Admin. R. 30.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42

U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

## DISCUSSION

### I.    Claims of Error

The claimant bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011). First, Schwartz claims that the ALJ failed to adequately evaluate evidence demonstrating that he met the criteria for section 4.02 of the Listed Impairments. Second, Schwartz claims the ALJ failed to assess his RFC accurately because she improperly found his subjective statements less than fully credible and gave inadequate weight to the opinions of Dr. Anthony Garvey and Dr. Carmelindo Siqueira. He contends these errors led the ALJ to reach an RFC assessment that did not accurately reflect all of his functional limitations and to conclude erroneously that he could perform work related activities beyond his capacity.

### II.    Listing 4.02

At step three of the decision making process, the claimant bears the burden of showing that his impairments satisfied the criteria for a Listed Impairment for a continuous period of 12 months. *Burch v. Barnhart,* 400 F.3d 676, 682-83 (9th Cir. 2005); *Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001); *Roberts v. Shalala*, 66 F.3d 179, 182-83 (9th Cir. 1995). Schwartz contends the ALJ erred by finding he did not satisfy the criteria for Listing 4.02 *Chronic heart failure.*

To satisfy Listing 4.02, a claimant must demonstrate that he satisfied the criteria in both paragraph A and paragraph B. Paragraph A requires the claimant to show that he maintained an

-3-    OPINION AND ORDER

"ejection fraction of 30% or less during a period of stability." 20 C.F.R. pt. 404 subpt. P, app. 1 §
4.02A. The ALJ correctly noted that Dr. Garvey found Schwartz had a stable ejection fraction that
exceeded the listing criteria at 35%. Admin. R. 23, 470, 695. Accordingly, Schwartz failed to show
that he satisfied paragraph A of the Listing.

Furthermore, even if Schwartz had shown an ejection fraction of 30% or less, he did not
present credible evidence that he satisfied the other necessary criteria. Paragraph B requires a
claimant to show that (1) persistent symptoms of heart failure very seriously limited his ability to
independently initiate, sustain, or complete activities of daily living and that a specialist in
cardiovascular disease concluded that the performance of an exercise test would present a significant
risk, or (2) that he suffered three separate episodes of acute congestive heart failure within a
consecutive period of 12 months, or (3) that he is unable to perform an exercise tolerance test due
to specific symptoms of heart failure. 20 C.F.R. pt. 404 subpt. P, app. 1 § 4.02B. Schwartz
independently engaged in a range of daily activities and no physician concluded that an exercise test
would present a significant risk to him. Admin. R. 23, 24, 26-27, 327-328. Schwartz did not present
evidence of three separate episodes of acute congestive heart failure within a 12 month period.
Admin. R. 23. The record reflects that he was able to perform exercise tolerance tests. Admin. R. 23,
476, 551. Schwartz failed to show that he satisfied paragraph B of Listing 4.02.

I find no error in the ALJ's evaluation of the evidence pertaining to the criteria for Listing
4.02. That evidence supports the ALJ's conclusion that Schwartz failed to establish the criteria for
the listing.

///

///

III.    **RFC Assessment**

Schwartz contends the ALJ failed to assess his RFC accurately because she improperly discredited his subjective statements and discounted the opinions of Drs. Garvey and Siqueira.

A.    **Credibility Determination**

In his written application, Schwartz alleged that his impairments limited his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. Admin. R. 331. He claimed that he had no energy, lacked stamina, suffered from dizzy spells and forgetfulness, and was often incoherent or out of breath. He stated that when he was agitated or scared, it felt like his heart would "pound out of" his chest, and that he often suffered from symptoms of vertigo while riding in a car. He alleged that his symptoms were extreme in the afternoon, but less severe in the morning. He stated that he would forget to breathe and become extremely emotional. Admin. R. 326.

During his administrative hearing, Schwartz said that he required frequent bathroom breaks and did not have clear command of his mental capabilities. Admin. R. 59. He said that he was dizzy most of the day, and asserted that his hands could go numb and affect his ability to do even sedentary work. Admin. R. 66. He stated that he had difficulty breathing when sitting, and that he would break into a coughing fit if he encountered anyone wearing perfume or cologne. He would have to lie down if he became exasperated. Admin. R. 57- 59. He asserted he could walk up to 150 yards before needing a break on a good day but would spend most of the day lying down. Admin. R. 67-68.

The ALJ believed Schartz's medically determinable impairments could reasonably be expected to produce some degree of the symptoms he claimed and she accepted some of his

allegations. For example, the ALJ's RFC assessment acknowledged a very limited capacity for physical exertion and exposure to pulmonary irritants such as fumes, odors, dusts, and gases. Admin. R. 24. The ALJ discounted Schwartz's credibility regarding the limiting effects of his impairments. Admin. R. 24. She did not believe his impairments imposed functional limitations exceeding those in the RFC assessment. Admin. R. 25.

An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80 F.3d at 1284.

The ALJ's written decision shows that she found Schwartz's alleged limitations to be inconsistent with the objective medical evidence and his reports to treatment providers. Admin. R. 28. The ALJ cited numerous records demonstrating that Schwartz's fatigue and dizziness were less severe than alleged. In 2012, for example, he reported that he felt dizzy if he stood too quickly or walked up a flight of stairs, but did not claim persistent dizziness. Admin. R. 476. In April, 2013, he reported that his extreme fatigue was "somewhat episodic" rather than the constant fatigue he claimed in his application. Admin. R. 633-34, 696. His self-reported symptoms of urinary

frequency are also contradicted by the record, and the ALJ cited specific medical reports in which he denied urinary urgency. Admin. R. 26, 633, 672, 676. Though he complained of numbness in his hands in his hearing, the record shows that Schwartz repeatedly denied any sensory disturbances or parasthesias. Admin. R. 661, 672, 680. His medical record also contradicts Schwartz's reported inability to concentrate. For instance, a progress notes indicate that Schwartz had "normal attention span and concentration." Admin. R. 634. Other progress notes report that Schwartz had "no complaints" and was "doing well." Admin. R. 693, 705.

Although Schwartz said that his heart felt like it would pound out of his chest at times, his implanted cardioverter defibrillator kept a record of palpitations and showed no tachycardia and normal rhythm. Admin. R. 629. Other records do not support his contention that he could only walk 150 yards, as treatment notes report that he could walk up to a mile, though he would feel fatigued the next day. Admin. R. 716. During an exercise test, he was able to converse without difficulty while walking on a treadmill after his beta blocker was changed to coreg, and he reported that he had not suffered from any chest pain or discomfort. Admin. R. 424, 666-67. Schwartz identified records demonstrating that he also reported shortness of breath and dizziness at times. Despite this, the ALJ interpreted the evidence rationally and her factual findings must be upheld even if the evidence could be interpreted differently in a manner more favorable to Schwartz. *Batson*, 359 F.3d at 1193. Admin R. 697. I find no error in the ALJ's determination that Schwartz was not fully credible in describing his functional limitations.

The ALJ also identified evidence that Schwartz's condition improved with his ICD and medication adjustments. An ALJ may consider evidence of improvements from treatment in determining the severity of symptoms. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693

(9th Cir. 2009); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); 20 C.F.R. §§ 404.1529(c)(3). The ALJ cited records from February 2012 reporting that Schwartz's energy levels had increased and that his dizziness had improved and occurred less frequently after he began using a CPAP machine. Admin. R. 26, 580. She also noted that, in October of 2012, Schwartz reported that he was walking on a regular basis, and had more energy after he stopped taking digoxin. Admin. R. 26, 689-90. In 2012, after starting epelerenone, Schwartz's overall symptoms and dizziness improved and he was experiencing fewer dizzy spells. Admin. R. 580. These instances demonstrate Schwartz's symptoms improved with treatment, and support the ALJ's determination that his symptoms were less severe than he reported.

The ALJ noted that Schwartz's daily activities included preparing meals, doing chores and playing video games with his children, helping to take care of his dogs, shopping occasionally, and driving. Schwartz contends that the ALJ misinterpreted the evidence of his ability to undertake these activities in formulating his RFC. An ALJ can support her credibility determination with evidence that daily activities suggest greater functionality than reported, even if another interpretation is possible. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ could rationally conclude Schwartz's ability to take part in these activies suggested his impairments were less severe than claimed. Furthermore, though Schwartz claims that the ALJ relied excessively on his reported daily activities to support her credibility determination, her written decision demonstrates that she also relied on inconsistencies between Schwartz's claims and the objective medical evidence and the reports he gave to treatment providers.

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific for me to conclude that the ALJ did not arbitrarily discredit Schwartz's statements. Her

reasoning is specific, clear and convincing and the credibility determination will not be disturbed. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

### B.   Medical Opinions.

#### *Carmelindo Siqueira, M.D.*

A cardiology specialist, Dr. Siqueira first evaluated Schwartz in June 2012 and saw him for regular follow up visits and medication management.   He diagnosed cardiomyopathy, morbid obesity, and obstructive sleep apnea. He noted that Schwartz had a history of ventricular tachycardia and an implanted cardioverter defibrillator ("ICD").   Admin. R. 673, 678, 682.   In September 2012, Schwartz reported occasional dizziness, but denied vertigo or sensory disturbances.   Schwartz said he had localized joint pain without stiffness or muscle aches.   Admin. R. 677.   In December 2012, Schwartz said he felt well and had no muscle aches or pain and Dr. Siquiera found he had normal heart rate and rhythm.   Admin. R. 672-73.   In February 2013, Dr. Siquiera continued to report the same diagnoses, but noted that Schwartz's activities of daily living were normal and that Schwartz denied chest pain or discomfort, palpitations, and rapid heart rate.   Admin. R. 667.   Dr. Siquiera counseled Schwartz to decrease his caloric intake, increase exercise, and lose weight.   Admin. R.669

Based on this treatment history, Dr. Sequeira offered two opinions regarding Schwartz's limitations.   In August 2012, Dr. Sequeira wrote a letter briefly stating Schwartz's diagnoses and history of ICD implantation.   Dr. Schwartz then opined that Schwartz was "disabled and unable to seek employment at this time."   Admin. R. 493.

The ALJ gave no weight to Dr. Siqueira's brief disability opinion.   Admin. R. 27.   An ALJ may discount a medical opinion, even that of a treating physician, for clear and convincing reasons supported by substantial evidence or, if the opinion is contradicted by other medical opinions, for

specific and legitimate reasons. *Tommasetti*, 533 F.3d at 1041; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ gave adequate reasons here. The ALJ noted that Dr. Schwartz's opinion was simply a conclusion on the ultimate question of disability, which is reserved to the Commissioner. Admin. R. 27. An ALJ need not accept a treating physician's opinion that is brief and conclusory in form with little in the way of clinical findings to support its conclusion. *Mangallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Notably the letter was a single sentence and did not identify specific functional limitations or work related activities that Schwartz could not perform. Accordingly, it did not state a medical opinion as much as a vocational opinion for which Dr. Sequeira had no special qualification. As the ALJ observed, there is no indication that Dr. Sequiera defined "disability" consistently with the definition used in adjudicating disability claims under the Social Security Act, for example. Admin. R. 27. In addition, the record showed that Schwartz reported improvement in his condition when Dr. Siquiera adjusted his medications shortly after writing this disability letter. Admin. R. 27, 689. The ALJ rationally inferred that the letter did not accurately reflect Schwartz's level of impairment because it did not account for his improvement. The ALJ did not err by discounting Dr. Siqueira's letter of August 2012.

In June 2013, Dr. Sequeira completed a functional assessment form for Schwartz. Admin. R. 732. He indicated that Schwartz could occasionally lift or carry 20 pounds, and frequently carry less than 10 pounds. Admin. R. 730. He estimated that Schwartz could walk or stand for less than two hours in an eight hour work day and required more than normal breaks. Admin. R. 730. He indicated Schwartz could sit and perform activities like the assembly of products for less than about 6 hours in a typical workday. He indicated that Schwartz could rarely climb, balance, kneel, crouch,

crawl, and so forth. He said that pushing or pulling weights less than 10 pounds would cause an increase in symptoms if it were done more than two and a half hours per day. He reported that Schwartz could occasionally reach and handle, and frequently perform fine manipulations and feel with his fingers and skin receptors. Admin. R. 732. He wrote that Schwartz continued to have shortness of breath with minimal activities and occasional dizziness. He reported that Schwartz's main problem was a severe weakness of the heart, and despite having an ICD, he continued to have periods of dangerous irregular heart beats. He opined that Schwartz had marked limitation of physical activity and that his blood pressure was marginal due to poor function of his heart. Admin R. 732.

The ALJ assigned some weight to this opinion and her RFC assessment acknowledged limitations in most of the same functional areas as Dr. Siqueira. Where the ALJ found Schwartz capable of standing for a total of two hours in a work day, Dr. Siqueira indicated his maximum was less than two hours. The ALJ found he could sit for a total of about six hours in a workday, but Dr. Siqueira said he was capable of less than about six hours. The ALJ limited Schwartz to occasional postural activities that Dr. Siqueira said he could perform rarely. The ALJ did not accept Dr. Siqueira's opinion that Schwartz required excessive breaks or that he had manipulative limitations. Admin. R. 23-24, 28.

Schwartz contends the ALJ did not assign appropriate weight to Dr. Sequeira's functional assessment form because she "preferred" the opinions of two state agency medical consultants who reviewed the entire record and provided opinions regarding Schwartz's functional capacity. Admin. R. 27. Scott Pritchard, D.O., reviewed the record in November 2011 and noted that the most recent medical evidence showed that Schwartz was improving and would be capable of sustaining sedentary

exertion. Dr. Pritchard said Schwartz would be able to stand and walk for a total of two hours and sit for a total of about six hours with normal breaks during an eight-hour workday. He found no medical evidence that Schwartz had problems with his hands, arms, or shoulders to support manipulative restrictions and no credible support for a limitation to less than six hours of sitting with normal breaks. Admin. R. 28, 89-91, 730-732. Martin Kehrli, M.D., reviewed the entire record again in February 2012 and affirmed Dr. Pritchard's findings. Admin. R. 28, 113-114.

An ALJ may discount the opinion of a treating physician in favor of the opinions of other physicians for specific, legitimate reasons that are based on substantial evidence in the record. *Mangelles*, 881 F.2d at 751. The ALJ found the opinions of Drs. Pritchard and Kehrli more consistent with the record as a whole than that of Dr. Siqueira. She said the evidence showed that Schwartz had normal strength, normal gait, and that he did not have a respiratory problem on exercise testing. Schwartz's reported daily activities included frequently walking through superstores for over an hour at a time. The ALJ noted the medical record did not contain evidence of any musculoskeletal complaints related to sitting, and no records suggest that sitting made it more difficult for Schwartz to breath. Dr. Siqueira stated that Schwartz's ejection fraction was 30% during the prior year when medical records instead showed that it varied during that period but was reportedly stable at 35%. Admin. R. 28, 470, 552, 589, 634, 639, 680. In addition, the ALJ pointed out that Dr. Siqueira relied on Schwartz's subjective statements in forming his functional capacity opinion. For example, Dr. Siqueira relied on Schwartz's reported frequent dizziness, but the record reflects this was an infrequent episodic symptom related to standing up quickly and climbing stairs. Admin. R. 28. An ALJ may discount a treating physician's opinion that is premised primarily on

-12-    OPINION AND ORDER

subjective complaints that the ALJ properly finds unreliable. *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989).

The ALJ provided legally sufficient reasons based on inferences reasonably drawn from substantial evidence to support the weight she attributed to Dr. Siqueira's opinion.

*Anthony Garvey, M.D.*

In October 2011, Dr. Garvey evaluated Schwartz for a potential ICD implant. Admin. R. 468-470. In April 2012, Dr. Garvey saw Schwartz for a follow up and medication management after the ICD implantation. Schwartz told Dr. Garvey that he would become "extremely fatigued and short of breath" with activity. Admin. R. 715. He denied palpitations, chest tightness, or chest pain, and reportedly would go out and walk, usually three or four blocks but on rare occasions up to a mile. Dr. Garvey reported that Schwartz had shown slow improvement. Schwartz asked Dr. Garvey about disability, and Dr. Garvey noted that Schwartz seemed to be "quite disabled from both a cardiac and pulmonary standpoint." Admin. R. 716.

The ALJ assigned no weight to Dr. Garvey's disability opinion. The ALJ correctly pointed out that a physician's statement that a claimant is disabled cannot be given controlling weight or special significance, because it is not a medical opinion about specific functional limitations, but an administrative conclusion reserved to the Commissioner. 20 C.F.R. §§ 404.527(d)(3), 417.927(d)(3); Social Security Ruling 96-5p, 1996 WL 374183. Similar to Dr. Siqueira's disability statement, there is no indication that Dr. Garvey understood or used the term "disability" consistently with the definition used in adjudicating disability claims under the Social Security Act. Admin. R. 27. As the ALJ observed, Dr. Garvey noted significant improvements in cardiac function with the ICD implant and medication adjustments. Admin. R. 27, 716. In addition, pulmonary function

testing showed only mild restrictive impairment that would not suggest that Schwartz was disabled from a pulmonary standpoint as Dr. Garvey asserted. Admin. R. 27, 477. Although Dr. Garvey also cited obstructive sleep apnea as a factor contributing to Schwartz's alleged disability, the ALJ properly inferred that it was controlled with a CPAP device. Admin. R. 27, 627, 716.

The ALJ's interpretation of the evidence is supported by inferences reasonably drawn from substantial evidence in the record. Accordingly, her findings must be upheld, even if the evidence also could be rationally interpreted differently, in a manner mor favorable to Schwartz. *Batson*, 359 F.3d at 1193.

To summarize, the ALJ considered all the evidence of functional limitations and reached an RFC assessment based on the limitations she found supported by the record as a whole. Schwartz's challenges to her evaluation of the evidence cannot be sustained and the ALJ is not required to incorporate additional limitations she found unsupported by the record. *Batson*, 359 F3d at 1197-98; *Osenbrock v. Apfel*, 240 F3d 1157, 1163-65 (9th Cir 2001); *Magallanes v. Bowen*, 881 F2d 747, 756-57 (9th Cir 1989). Accordingly, I find no error in the ALJ's RFC assessment.

## IV.    Vocational Testimony

At step five of the decision-making process, the Commissioner must show that jobs exist in the national economy that a person having the functional limitations of the claimant can perform. *Yuckert*, 482 US at 141-42; 20 C.F.R.§§ 404.1520(e), (f), 416.920(e), (f). An ALJ can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Andrews*, 53 F3d at 1043. Here the ALJ elicited testimony based on her assessment of Schwartz's RFC. The VE testified that such a person could perform the work related activities required in a range of sedentary unskilled occupations representing significant

numbers of jobs in the national economy. Schwartz contends the ALJ elicited this testimony from the VE with hypothetical assumptions that did not accurately reflect all of his functional limitations. The alleged limitations the ALJ omitted from the hypothetical assumptions, however, were supported only by evidence the ALJ properly evaluated and discounted. The hypothetical assumptions used to elicit the VE's testimony accurately reflected the ALJ's RFC assessment which, in turn, included all the functional limitations the ALJ found supported by the record. While the evidence may be susceptible to a different interpretation more favorable to Schwartz, that is not a proper basis to overturn the ALJ's decision. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this ___28th___ day of July, 2016.

_____
Robert E. Jones, Senior Judge
United States District Court